**Allen T. JONES, Plaintiff,**

v.

**Michael B. O'HIGGINS, Defendant.**

**No. 87–CV–1002.**

United States District Court, N.D. New York.

May 14, 1990.

Hiscock & Barclay (Richard Weisz, of counsel), Albany, N.Y., for plaintiff.

Thorn and Gershon (Arthur H. Thorn, of counsel), Albany, N.Y., for defendant.

MEMORANDUM–DECISION
AND ORDER

McCURN, Chief Judge.

I. BACKGROUND

This is a motion by the defendant, Michael O'Higgins, to recover legal fees and costs which he incurred in the course of successfully defending against claims brought by the plaintiff under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant's motion is based on 29 U.S.C. § 1132(g)(1) and Rule 54(d) of the Federal Rules of Civil Procedure.

In the underlying action the plaintiff asserted that the defendant breached fiduciary obligations while managing the assets of plaintiff's pension plan. The suit was precipitated by a large drop in the value of the assets contained in the pension plan over a nine-month period in 1986. As it was originally styled, the complaint assert-

ed that defendant O'Higgins: failed to act in accordance with the "prudent man" standard of 29 U.S.C. § 1104(a)(1)(B); failed to diversify the pension plan investment portfolio in violation of 29 U.S.C. § 1104(a)(1)(C); did not act in accordance with the ERISA plan documents as required by 29 U.S.C. § 1104(a)(1)(D); and engaged in "prohibited transactions" in violation of 29 U.S.C. § 1106(b)(1), (2), and (3)—acts which could be described as self-dealing with plaintiff's pension funds. Beyond the normal statutory damages and legal costs, the plaintiff also sought an award of punitive damages.

At the end of a two-day non-jury trial, plaintiff withdrew from consideration all but two of the ERISA claims. Plaintiff also withdrew his claim for punitive damages. The two claims remaining for consideration after trial were: (1) whether the defendant failed to diversify the pension plan's investment portfolio so as to minimize the risk of large losses under 29 U.S.C. § 1104(a)(1)(C), and (2) whether defendant breached his fiduciary obligation to act as a "prudent man" by failing to take appropriate steps to avoid the large drop in the value of the pension plan, 29 U.S.C. § 1104(a)(1)(B). On September 1, 1989, this court issued a memorandum-decision and order (hereinafter "Decision") which held in favor of the defendant on all counts.

With respect to the diversification claim pursuant to section 1104(a)(1)(C), this court held that the plaintiff had at least made out a prima facie case. This was so because "[t]he concentration of over 90% of the fund's assets into three stocks during the period of March to December of 1986, along with the heavy losses incurred over that time, standing alone, would permit a court to find a failure on the part of the defendant to fulfill his fiduciary obligation." Decision at 13. However, the court held further, that the defendant had come forward with sufficient convincing evidence and testimony to sustain his burden that the concentration of the investments "under the circumstances [was] clearly prudent." Decision at 14.

The court rejected plaintiff's other "prudent man" cause of action on the grounds that: (1) the defendant put forward credible evidence that his "contrarian" investment strategy was "both independently prudent and within the standards and practice of the investment industry;" (2) it appeared to the court that plaintiff, rather than the defendant, decided to sell the stocks at a low price; and (3) plaintiff had failed to provide significant proof, through expert testimony or otherwise, that the defendant had not performed within industry standards. Decision at 18–19. It should be noted that the court's determination, as to who made the decision to sell the stock at a low price, was a credibility determination which was made after a consideration of the conflicting testimony of the plaintiff and witnesses for the defendant. Decision at 8.

## II. DISCUSSION

### A. Legal Standard

The defendant has moved for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) which states in applicable part:

In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The decision on whether to award legal costs is generally based on five factors:

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Miles v. New York State Teamsters Conference, Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 602 n. 9 (2nd Cir.) *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *see Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2nd Cir.1987); *Ford v. New York Central*

*Teamsters Pension Fund,* 506 F.Supp. 180, 183 (W.D.N.Y.1980) *aff'd,* 642 F.2d 664 (2nd Cir.1981) (per curiam). "The five factor standard is the appropriate one to be applied regardless of which party prevails." *Gray v. New England Tel. and Tel. Co.,* 792 F.2d 251, 258 (1st Cir.1986) (citing, *Gordon v. U.S. Steel Corp.,* 724 F.2d 106 (10th Cir.1983) and *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069 (9th Cir.1983)).

Determinations as to whether an award of attorney's fees under Section 1132(g)(1) is appropriate "lies within the sound discretion of the district court." *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d at 871; *Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 749 F.2d 1000, 1004 (2nd Cir.1984). A number of courts who have analyzed the five factors have concluded that they "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *West v. Greyhound Corp.,* 813 F.2d 951, 955 (9th Cir.1987); *Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1506 (9th 1984); *see also Gray,* 792 F.2d at 259 ("ERISA was primarily intended to protect the interests of plan beneficiaries and participants; therefore, such a 'bias' in the standard does not thwart the legislative injunctive that attorney's fees may be awarded to 'either' party in the court's discretion."); *Marquardt v. North Am. Car Corp.,* 652 F.2d 715, 719–720 (7th Cir. 1981); *cf. Park South Hotel v. New York Hotel Trades Council,* 715 F.Supp. 596, 597–98 and n. 4 (S.D.N.Y.1989).[1]

The favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith—the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights. *See e.g., Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) ("ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' ... and 'to protect contractually defined benefits.'") (and cases cited therein); *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d at 872 ("ERISA's attorney fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights.").

## B. Contentions of the Parties

Affidavits submitted by the defendant state that he incurred over $33,000.00 in legal fees and costs in the defense of this action—an action which he believes was essentially frivolous. Defendant first notes that the plaintiff voluntarily withdrew from the court's consideration the claims concerning prohibited transactions and the request for punitive damages. This, defendant maintains, reveals that those claims had no merit. Defendant further contends that he was not only successful in ultimately having all claims dismissed, but that the plaintiff completely failed to offer any credible proof on (1) the prudence of the investment strategy followed by the defendant or (2) the proper measure of damages. The defendant asserts that the court should conclude that the plaintiff made serious accusations, ones that could injure the defendant's reputation and livelihood, without doing the legal and investigatory work necessary to support

---

**1.** This view is consistent with the Second Circuit's recent decision in *Anita Foundations, Inc. v. ILGWU National Retirement Fund,* 902 F.2d 185 (2nd Cir.1990). There, the court addressed the propriety of an award of attorney's fees to employers, under 29 U.S.C. § 1451(e). The employers had brought suit against an ERISA covered pension fund to clarify their obligations with respect to withdrawal liability under ERISA. The pension fund was attempting to fulfill its fiduciary duty under ERISA to collect all withdrawal liability pursuant to 29 U.S.C. §§ 1381(a), 1401, and 1451. Therefore, the pension fund was attempting to enforce its rights under ERISA. When discussing the same five

factor test as is applied under § 1132(g)(1) the court stated:

> [T]he five-factor test provides sufficient latitude to review a fee request by allowing courts to consider which party is requesting fees, assess the relative culpability of the parties and address the potential deleterious effect of a fee award. *For these reasons, the five factors will often balance against an employer seeking fees under ERISA.*

*Id.* at 189 (emphasis added). The court thus found that the "flexible five factor test will not discourage colorable withdrawal liability suits." *Id.* at 189.

the claims. On this basis, defendant believes he has shown the type of "bad faith" that would merit an award of attorney's fees.

The plaintiff recognizes that he lost the suit but maintains that an award of attorney's fees is inappropriate. Plaintiff first notes that the court specifically held that he made out a prima facie case for lack of diversification. Decision at 13. Plaintiff asserts that the showing of a prima facie case is evidence that the plaintiff's suit was "substantially justified." Plaintiff further asserts that the drop in the value of the highly concentrated investment portfolio from approximately $836,335.00 to $525,-989.00 over a nine-month period would make most reasonable people believe that something imprudent had occurred. Plaintiff correctly points out that the court made a number of important credibility determinations, favorable to the defendant, in the course of deciding this case. Specifically, the court found that it was plaintiff who opted for the higher risk, higher yield, investment strategy and that it was the plaintiff who decided to sell the concentrated investment portfolio when it was at its lowest value. Plaintiff contends that a court should be slow to award attorney's fees when the basis of its decision was the credibility of conflicting witnesses. With respect to the issue of "prudence" the court recognizes that even the defendant's own expert stated that he would probably not concentrate an investment portfolio in fewer than six stocks. Decision at 15. Here, the defendant was invested in only three stocks, and then, during a period of sharp decline.

## C. Analysis

The first factor of the five-factor test is the degree of the offending party's culpability or bad faith. It does not appear that the plaintiff acted in bad faith in bringing this suit. The plaintiff did make out a prima facie case of an ERISA violation. The concentration of the investments was unusual even under the standards of the defendant's own expert. Moreover, if the court had found plaintiff Jones to be the more credible witness, and it was a close

question, this court may have held in favor of the plaintiff regardless of the testimony on the prudence of the investments. Though the plaintiff withdrew a number of claims from the court's consideration at the end of trial for lack of proof, it must be recognized that the defendant never moved for summary judgment on these issues—an action which would have obviated the need for any trial preparation on these issues. Moreover, given that a trial was clearly necessary on at least two of plaintiff's ERISA claims, it does not appear to the court that these "extra" claims greatly increased defendant's costs in defending this action.

The second factor is the ability of the offending party to satisfy an award of attorney's fees. The parties apparently agree that the plaintiff could satisfy an award of attorney's fees.

The third factor is whether an award of attorney's fees would deter other persons from acting similarly under like circumstances. As discussed, a central purpose of ERISA is to protect plan beneficiaries by allowing them to enforce their rights in court. In circumstances where the plaintiff has come forward with a prima facie case of an ERISA violation, a decision to award attorney's fees would likely operate to "chill" other plaintiffs from asserting their rights under ERISA. Thus, an award of attorney's fees in this instance, even if it might discourage similar suits, would go against the grain of ERISA's purpose—the protection of beneficiaries.

The fourth factor is the relative merits of the parties' positions. This factor cuts in favor of the defendant for the obvious reason that he won on all counts. It is also clear that some of the claims asserted by the plaintiff were not supported by any evidence. However, the court's decision on two of plaintiff's claims was not premised so much upon the defendant's affirmative defense, but rather, plaintiff's failure to provide credible expert testimony to counterbalance the expert evidence provided by the defendant. If plaintiff had placed an appropriate expert on the stand, the court's decision, as to whether ERISA's fiduciary standards had been violated, would have

been very close. While this factor cuts in favor of the defendant, it does not cut too strongly in his favor.

The last factor, whether the action conferred a common benefit, does not cut in favor of either party. While the plaintiff brought this action for his own benefit, it is plain that other persons who invested with the defendant would have stood to benefit from a finding that ERISA's fiduciary standards had been violated.

## III. CONCLUSION

Given the circumstances of this case and an analysis of the five factors generally considered in a motion for an award of attorney's fees under ERISA, 29 U.S.C. § 1132(g)(1), this court holds that an award of attorney's fees would be improper. This is particularly so due to the court's determination that many of plaintiff's claims in the underlying action were substantially justified and that the plaintiff did not act in bad faith. Moreover, a decision denying attorney's fees would be in accord with ERISA's goal of protecting beneficiaries and enforcing fiduciary obligations. Accordingly, defendant's motion is hereby denied.

IT IS SO ORDERED.