James **MAHONEY**, as Director of the Transport Workers Union Local 100 Retirees' Association, and Plan Administrator of the Transport Workers Union Local 100 Retirees' Association Benefit Plan, et al., Plaintiffs,

v.

**J.J. WEISER & COMPANY,** Inc., et al., Defendants.

No. 04 Civ. 2592(VM).

United States District Court, S.D. New York.

Aug. 18, 2009.

584

Susan Marie Jennik, William G. Schimmel, Thomas Martin Kennedy, Kennedy, Jennik & Murray, P.C., New York, NY, for Plaintiffs.

Daniel Glenn Ecker, Michael L. Hart, Jonathan Robert Harwood, Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, NY, Jack Babchik, Brian Thomas Carr, Babchik & Young LLP, White Plains, NY, Suzanne Tongring, Tongring Law Offices, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

### I. BACKGROUND

Defendants Michael J. Fitzpatrick and John Meehan (collectively, "Defendants") filed a motion seeking an award of attorney's fees from plaintiffs in this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1132(g)(1) (" § 1132(g)(1)"). By Order dated July 31, 2009, Magistrate Judge Henry B. Pitman, to whom this matter had been referred, issued a Report and Recommendation (the "Report"), a copy of which is attached and incorporated herein, recommending that Defendants' motion be denied in all respects. Defendants filed timely objections to the Report challenging its factual findings and legal conclusions. For the reasons stated below, the Court denies Defendants' motion in its entirety.

## II. *STANDARD OF REVIEW*

■ Where a party "makes a specific written objection ... after being served with a copy of [a magistrate judge's] recommended disposition, ... the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quotation marks omitted) (*citing United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)); *see also* Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The Court is not required to review any portion of a Magistrate Judge's report that is not the subject of an objection. *See Thomas*, 474 U.S. at 149, 106 S.Ct. 466. A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See* Fed.R.Civ.P. 72(b); *DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994).

## III. *DISCUSSION*

Having conducted a de novo review of the full factual record in this litigation, including the pleadings, and the parties' respective papers submitted in connection with the underlying motion and in this proceeding, as well as the Report and applicable legal authorities, the Court concludes that denial of Defendants' motion, for substantially the reasons set forth in the Report, is warranted.

■ In recommending denial of Defendants' motion, Magistrate Judge Pitman applied the five-factor test enunciated by the Second Circuit in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2d Cir.1987), to guide the courts' inquiry in evaluating applications for attorney's fees pursuant to § 1132(g)(1), whether the prevailing party is the plaintiff or defendant. Those considerations are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Id.* at 871.

■ The Report properly notes authority in this Circuit cautioning that, other than in exceptional circumstances, in order not to discourage lawsuits by ERISA beneficiaries asserting in good faith their rights under employee benefit plans, the *Chambless* factors ordinarily balance against awarding recovery of attorney's fees to prevailing defendants. *See Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund*, 902 F.2d 185, 188–89 (2d Cir.1990).

Defendants contend that the Report focuses improperly on cases in which plan participants alone served as plaintiffs, and not on cases where plan fiduciaries and participants were recruited to serve as plaintiffs. They also challenge the Report's analysis and application of the first, third and fourth *Chambless* factors. Finally, Defendants object that the Report did not take into account the burden placed on them to defend this litigation in the district and appellate courts, and did not address their entitlement to attorney's

fees for defending on appeal.[1] The Court has considered these arguments and rejects them.

▮ The Court is not persuaded that, for the purposes of awarding attorney's fees to prevailing defendants pursuant to § 1132(g)(1), it makes a material difference whether plaintiffs in an ERISA action consist solely of plan participants or plan fiduciaries and participants. The Court finds no authority supporting such a distinction, and Defendants have not cited any.

▮ With regard to the Report's *Chambless* factors, the Court rejects Defendants' challenges. As to the first factor, though Defendants ultimately prevailed on the merits of their position in this Court and on appeal, under the circumstances that gave rise to the action at the time it was filed, there is no sufficient evidence of culpability or bad faith on Plaintiffs' part in commencing the litigation. Concerning the need for deterrence reflected in the third factor, the Court agrees that given ERISA's policy of protecting plan beneficiaries, colorable claims pursued in good faith, even if ultimately unsuccessful, should not be discouraged by awards of attorney's fees to prevailing defendants. *See Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 485 (2d Cir. 2002); *Salovaara v. Eckert*, 222 F.3d 19, 31 (2d Cir.2000).

As regards the fourth factor, the relative merits of the parties' positions, though Defendants' arguments prevailed, Plaintiffs' losing claims should be considered in the context of the absence of culpability or bad faith as determined in assessing the first factor. *See Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs.*, No. 04

Civ. 4474, 2007 WL 1434952, at *1 (S.D.N.Y. May 15, 2007). In this light, the Court finds that Plaintiffs' position cannot be considered so substantially devoid of merit as to tip the *Chambless* factors dispositively in Defendants' favor on this basis alone.

Defendants contend that the Report does not consider the burden they encountered in defending this litigation, which they argue balances the third, fourth and fifth *Chambless* factors in their favor. The Court has examined this objection and is not persuaded. This argument may be compelling in a case showing evidence of intentional misconduct, or sufficient culpability or bad faith, which the Court finds absent here.

Finally, Defendants object that the Report does not consider their entitlement to recovery of attorney's fees in connection with their appeal. However, there is no record that that matter was before Magistrate Judge Pitman, as the Circuit Court's ruling in this case was not rendered until shortly before the issuance of the Report, and thus no formal application for attorney's fees in that regard has been filed.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that upon consideration of the Report and Recommendation of Magistrate Judge Henry Pitman dated July 31, 2009 (Docket No. 155), substantially for the reasons discussed therein, the objections (Docket No. 156) of defendants Michael J. Fitzpatrick and John Meehan ("Defendants") are rejected and Defen-

---

1. Defendants contend that Magistrate Judge Pitman issued the Report four days after the Second Circuit's Summary Order affirming this Court's Decision in the underlying action and that the Report makes no mention of the Second Circuit's Order. The Report, however, in referring to this Court's decision, specifically cites its affirmance by the Circuit Court. *See* Report at 2.

dants' motion for an award of attorney's fees and costs in this action is DENIED.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.

TO THE HONORABLE VICTOR MARRERO, United States District Judge,

I. *Introduction*

Defendants Michael J. Fitzpatrick and John Meehan move for an award of attorneys' fees in this ERISA action, pursuant to 29 U.S.C. § 1132(g)(1) (Docket Item 132). For the reasons set forth below, I respectfully recommend that Fitzpatrick and Meehan's motion be denied in all respects.

II. *Facts*

A. *Facts Underlying Plaintiffs' Claims*

The facts relevant to the disposition of this motion are set forth in two opinions addressing the merits of the plaintiffs' claims that were issued by the Honorable Michael B. Mukasey, United States District Judge (now retired) and the Honorable Victor Marrero, United States District Judge. *Mahoney v. JJ Weiser & Co.,* 564 F.Supp.2d 248 (S.D.N.Y.2008), *aff'd,* No. 08–3634–cv, 339 Fed.Appx. 46, 2009 WL 2243862 (2d Cir. July 28, 2009); *Toussaint v. JJ Weiser & Co.,* 04 Civ. 2592(MBM), 2005 WL 356834 (S.D.N.Y. Feb. 13, 2005). Although familiarity with these decisions is assumed, I shall summarize the facts to the extent necessary for an understanding of the disposition I recommend.

Plaintiff Mahoney is the Director of the Transport Workers Union Local 100 Retirees Association (the "Retirees Association") and Plan Administrator of the Transport Workers Union Local 100 Retirees Association Benefit Plan. The remaining plaintiffs are participants in a health benefits plan (the "Plan") open to members of the Retirees Association.

Defendant JJ Weiser & Co. ("Weiser") is a plan administrator and insurance brokerage firm; it assisted in the issuance of the Plan. Defendants Cohen and Gluck are the former and current presidents of Weiser, respectively. Defendant Fitzpatrick was the director of the Retirees Association from 2000 through October 2002. Defendant Meehan was the director of the Retirees Association from 1990 through 2000.

Plaintiffs allege, among other things, that defendants breached their fiduciary duties to the Plan and engaged in prohibited transactions, all in violation of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1104–06. Specifically, plaintiffs allege that Fitzpatrick and Meehan caused the Retirees Association to pay far too much for a medical benefits plan that provided far too few benefits in light of the premiums charged.

In January 1978, the Transport Workers Union (the "TWU") obtained from Weiser and a predecessor entity a Limited Medical Expenses and Accidental Death and Dismemberment Policy (the "Policy"). The Policy provided certain benefits to members of the Retirees Association who were certificate holders. Certificate holders paid $75 per year to the Retirees Association for a family membership and $45 per year for a single membership. All but $10 of these amounts would be paid to Weiser as premium payments.

The Policy provided three types of benefits. Part I reimbursed out-of-pocket expenses up to a maximum of $25 for blood transfusions, oxygen and the rental of crutches, wheelchairs or other hospital equipment for home use. Part II of the Policy provided accidental death and dismemberment benefits up to a maximum of

$2,000. Part III of the Policy provided hospital income benefits of $75 per week for stays in acute care hospitals and $37.50 per week for up to four weeks of convalescent care.

In 2001, the Retirees Association paid premiums for the Policy totaling $354,083; benefits paid out that year totaled $35,353. In 2002, the Retirees Association paid premiums totaling $327,590; benefits paid out that year totaled $14,985. In 2003, the Retirees Association paid premiums totaling $307,854; benefits paid out that year totaled $13,041. Thus, for these three years the Retirees Association paid a total of $989,527 for benefits totaling $63,389 or about 6.4% of premiums paid.[1] In 2004, the Retirees Association replaced the Policy with a self-insured plan under which benefits were increased.

Plaintiffs contend that the purchase and repeated renewal of the Policy was a breach of Fitzpatrick and Meehan's fiduciary duties because the claims-loss ratio was less than 10% while the typical ratio in the health insurance industry is 70–75%. Plaintiffs also allege that Fitzpatrick and Meehan received kickbacks from JJ Weiser as consideration for keeping the Policy in place.

### B. *Relevant Procedural History*

Plaintiffs commenced this action in April, 2004. In addition to the current plaintiffs, the complaint originally listed Roger Toussaint, as President of the TWU, and Ed Watt, as Secretary of Local 100 of the TWU, as parties. Shortly after the complaint was filed, defendants moved to dismiss the action on a number of grounds. On February 13, 2005, Judge Mu-

kasey denied the motion in part and granted it in part, dismissing all claims sounding in fraud, all claims by Toussaint and Watt and all of plaintiffs' state law claims. Judge Mukasey concluded that neither Toussaint nor Watt were the Secretary of Labor, a plan "participant," a plan "beneficiary," or a plan "fiduciary," and, therefore, neither were persons designated under ERISA as authorized to bring a civil enforcement action. *Toussaint v. JJ Weiser & Co.,* *supra,* 2005 WL 356834 at *5–*6, *citing* 29 U.S.C. § 1132(a). To the extent that plaintiffs attempted to assert claims for fraud or fraudulent concealment, Judge Mukasey found that plaintiffs had failed to allege the claims with the particularity required by Fed.R.Civ.P. 9(b). *Toussaint v. JJ Weiser & Co., supra,* 2005 WL 356834 at *8–*11. Finally, Judge Mukasey concluded that all of plaintiffs' remaining state law claims were pre-empted by ERISA and, therefore, had to be dismissed. *Toussaint v. JJ Weiser & Co., supra,* 2005 WL 356834 at *12–*16. Because Judge Mukasey found the state law claims were pre-empted, it was unnecessary for him to reach defendants' argument that the claims were deficient as a matter of state law. Finally, Judge Mukasey rejected defendants' argument that the insurance broker defendants were not fiduciaries within the meaning of ERISA.

After the conclusion of discovery, plaintiffs moved for summary judgment on the issue of liability and defendants cross-moved for summary judgment dismissing the complaint. Among other things, Fitzpatrick and Meehan argued that they did not have sufficient discretion to be considered fiduciaries within the meaning of

---

1. Judge Mukasey and Judge Marrero's opinions provide slightly different numbers for the total premiums paid and the total benefits received. *Compare Toussaint v. JJ Weiser & Co.,* 2005 WL 356834 at *2 *with Mahoney v. JJ Weiser & Co.,* 564 F.Supp.2d at 251. The figures set forth in the text are from the latter opinion, issued after the close of discovery. The former opinion reported total premiums of $1,050,000 and total benefits of $72,146 (6.8%) for 2001 through 2003. The difference is not material.

ERISA, and that, even if they were fiduciaries, they did not breach their fiduciary duties by renewing the policy. Judge Marrero found that there were issues of fact concerning the scope of Fitzpatrick and Meehan's discretion, and, therefore, summary judgment could not be granted dismissing the complaint on the ground that they were not fiduciaries. *Mahoney v. JJ Weiser & Co., supra*, 564 F.Supp.2d at 258. However, Judge Marrero went on to find that even if Fitzpatrick and Meehan were fiduciaries, they had not violated their fiduciary duties as a matter of law. First, Judge Marrero noted that there was no dispute that no other policy existed that would have provided greater benefits for smaller premiums. Thus, Judge Marrero framed the issue as being whether Fitzpatrick and Meehan had breached their fiduciary duties by renewing the Policy rather than self-insuring. Judge Marrero then concluded that faced with the alternatives of the terms of the Policy and self insuring, Fitzpatrick and Meehan did not, as a matter of law, violate their fiduciary duties by avoiding the risks inherent in self-insuring and retaining the Policy.

> That the Former Directors (and any other decision makers) chose to retain an insurance policy that undisputably provided the most benefits to participants for the premiums charged, rather than self-insuring and having the Retirees Association internalize the risk was a business decision, and one that impacted only the Retirees Association, not the participants. And that no other insurance company or policy offered benefits comparable to or better than the Policy is hard to reconcile with Plaintiffs' sweeping statements that the claims-loss ratio was "extraordinarily low" and "so outside the bounds of the industry

norm." (Pls. Opp'n 15.) Plaintiffs' response that it is not surprising that other insurance companies did not offer such "substandard coverage" is at best speculative or conclusory, and not sufficient to counter this fact. (*Id.*) As profit-seeking ventures, insurance companies presumably would have been eager to provide increased coverage for these premiums if Plaintiffs' arguments were correct.

> Finally, even if the Self–Insured Plan constitutes a better deal for the Retirees Association, and consequently for its members, the Court cannot hold that in such instances where the insurance policies provided by the market are possibly inferior choices, a fiduciary's only option is to self-insure and risk subjecting his or her organization to significant expenditures should the payments of benefits be greater than the amount collected in premiums.

> Finally, as to demanding a rebate or refund for the payment of excessive premiums, Plaintiffs have not demonstrated that the Former Directors had a right to request and obtain such relief.

*Mahoney v. JJ Weiser & Co., supra*, 564 F.Supp.2d at 259.

With respect to the allegation that Fitzpatrick and Meehan received kickbacks, Judge Marrero found that there was no evidence to support these allegations. *Mahoney v. JJ Weiser & Co., supra*, 564 F.Supp.2d at 260.

Accordingly, Judge Marrero granted Fitzpatrick and Meehan's motion for summary judgment and dismissed all claims against them.[2]

---

**2.** In the same opinion, Judge Marrero also granted summary judgment in favor of all

other defendants.

Since they have prevailed in this action, Fitzpatrick and Meehan now seek to recover their attorneys' fees.

### III. *Analysis*

An application for attorney's fees in an ERISA action is governed by 29 U.S.C. § 1132(g), which provides:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

■ The Second Circuit has identified five-factors as being relevant to an application for attorney's fees under Section 1132(g):

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir. 1987); *accord Jones v. UNUM Life Ins. Co.,* 223 F.3d 130, 138 (2d Cir.2000); *Salovaara v. Eckert,* 222 F.3d 19, 27–28 (2d Cir.2000); *Miller v. United Welfare Fund,* 72 F.3d 1066, 1074 (2d Cir.1995); *Finkel v. S.I. Assocs. Co.,* CV 05–4546(LDW), 2008 WL 4376567 at *1 (E.D.N.Y. Sept. 25, 2008); *Durgin v. Blue Cross & Blue Shield of Vt.,* 1:07–CV–241 (JGM), 2008 WL 4416285 at *6 (D.Vt. Sept. 24, 2008); *Kazazian v. Bartlett & Bartlett LLP,* 03 Civ. 7699(LAP), 2007 WL 4563909 at *4 (S.D.N.Y. Dec. 19, 2007); *Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs.,* 04 Civ. 4474(JSR), 2007 WL 1434952 at *1 (S.D.N.Y. May 15, 2007); *Mendez v. Teachers Ins. & Annuity Ass'n & College Ret. Equities Fund,* 982 F.2d 783, 788 (2d Cir.1992); *Sansevera v. E.I. DuPont de Nemours & Co.,* 859 F.Supp. 106, 116 (S.D.N.Y.1994). No single factor is determinative. *Rice v. Rochester Laborers' Annuity Fund,* 888 F.Supp. 494, 500 (W.D.N.Y.1995); *Scalamandre v. Oxford Health Plans (N.Y.), Inc.,* 823 F.Supp. 1050, 1065 (E.D.N.Y.1993).

■ These five factors guide a court's inquiry regardless of whether a plaintiff or defendant is seeking fees. *Salovaara v. Eckert, supra,* 222 F.3d at 28; *Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund,* 902 F.2d 185, 188–89 (2d Cir.1990). However, when fees are sought by a prevailing defendant, courts, including our Court of Appeals, have frequently concluded that the factors ordinarily slant in favor of the plaintiff and militate against an award of fees.

> [C]ourts have cautioned that the five factors "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *West v. Greyhound Corp.,* 813 F.2d 951, 956 (9th Cir.1987) (internal quotation marks omitted); *see Anita Founds.,* 902 F.2d at 188–89 (noting that "the five factors will often balance against an employer seeking fees under ERISA" (citing cases)). For example, courts have found that the "culpability" of a losing plaintiff "significantly differs" from that of a losing defendant: "A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found 'culpable,' but may be only in error or unable to prove his case." *Marquardt,* 652 F.2d at 720; *see id.* at 720–21 (discussing the other four factors); *see also Russell,* 726 F.2d at 1416 (explaining "why trustees of benefit plans are more likely than employers to recover fees when the [five factors] are applied").

Because "ERISA was primarily intended to protect the interests of plan beneficiaries and participants," this " 'bias' in the standard does not thwart the legislative injunctive that attorney's fees may be awarded to 'either' party in the court's discretion." *Gray*, 792 F.2d at 259. To the contrary, the "favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith-the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights." *Jones v. O'Higgins*, 736 F.Supp. 1243, 1245 (N.D.N.Y.1990); *see also Meredith*, 935 F.2d at 128–29 ("[W]e must keep in mind ERISA's essential remedial purpose: to protect beneficiaries of pension plans. Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose." (internal quotation marks omitted)); *cf. Chambless*, 815 F.2d at 872 ("ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights.").

*Salovaara v. Eckert, supra*, 222 F.3d at 28; *accord Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 147 (2d Cir.2003) ("It is the general rule that 'attorney's fees should not be charged against ERISA plaintiffs.' "); *Durgin v. Blue Cross & Blue Shield of Vermont, supra*, 2008 WL 4416285 at *6 (same); *Critelli v. Fid. Nat'l Title Ins. Co. of New York*, 554 F.Supp.2d 360, 363 (E.D.N.Y. 2008) ("[A] number of courts that have evaluated the five factors have concluded that they 'very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs.' "); *Owen v. Wade Lupe Constr. Co.*, 325 F.Supp.2d

146, 156 (N.D.N.Y.2004) (an award of attorney's fees to a prevailing ERISA defendant is "a rather extraordinary remedy"); *see Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 485 (2d Cir. 2002); *Finkel v. S.I. Assocs. Co., supra*, 2008 WL 4376567 at *1; *Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs., supra*, 2007 WL 1434952 at *1; *King v. Tadco Constr. Corp.*, CV–03–5134 (CPS), 2005 WL 1311929 at *2 (E.D.N.Y. May 26, 2005); *Gay v. Medi–Ray, Inc.*, 01 Civ. 8497 (*IMS* ), 2002 WL 34186938 at *10 (S.D.N.Y. July 26, 2002). My own research suggests that prevailing ERISA defendants are most commonly awarded attorneys fees when there is evidence of intentional dishonesty on the part of the plaintiff. *See Seitzman v. Sun Life Assurance Co. of Canada, Inc., supra*, 311 F.3d at 484–85 (assessing attorney's fees against unsuccessful claimant for disability benefit; claimant's alleged total disability commenced within a 24–hour period, was not accompanied by any physical trauma and closely coincided with the date plaintiff had previously announced as his retirement date; in addition, approximately one month after the alleged onset of the disability, claimant successfully applied for other employment); *Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs., supra*, 2007 WL 1434952 at *1 (fees assessed against physician suing as assignee of plan beneficiaries where there was strong evidence physician had engaged in fraudulent billing practices); *see generally Critelli v. Fid. Nat'l Title Ins. Co. of New York, supra*, 554 F.Supp.2d at 366–67 (suggesting that the standard for an award of fees to a successful ERISA defendant is close to fraud).

Application of the *Chambless* factors in this case, in conjunction with the frequent admonition that caution should be exercised before fees are awarded to a prevailing ERISA defendant, lead to the conclu-

sion that an award of attorneys' fees to Fitzpatrick and Meehan is not appropriate in this case.

▇ The first factors, plaintiffs' culpability and bad faith, are generally regarded as the most significant factors. *Critelli v. Fid. Nat'l Title Ins. Co. of New York, supra,* 554 F.Supp.2d at 364. At the time the action was commenced, the only clearly established facts were that Fitzpatrick and Meehan had apparently overseen a Plan which had for more than a decade renewed an insurance policy that cost more than ten times the medical benefits it was providing. Given the duty of an ERISA fiduciary[3] to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....," 29 U.S.C. § 1104(a)(1)(B); *see Liss v. Smith,* 991 F.Supp. 278, 294–95 (S.D.N.Y.1998), it was not unreasonable for plaintiffs to conclude that Fitzpatrick and Meehan had violated their duties as fiduciaries. Although facts were disclosed in discovery that ultimately supported a grant of summary judgment in their favor, namely that Fitzpatrick and Meehan had actively, but unsuccessfully, sought comparable but less expensive policies from other companies (Fitzpatrick Dep. at 86–89; Meehan Dep. at 47–49, annexed as Exhibits 17 and 18, respectively to Declaration of Daniel G. Ecker, Esq., dated Nov. 5, 2007 (Docket Item 95)), Fitzpatrick and Meehan offer no evidence that this information was known to plaintiffs before they commenced the action nor do they offer any evidence that plaintiffs knew that no comparable, but less expensive policies existed. Given the gross disparity between the premiums paid and the benefits received and the existence of a fiduciary duty on the part of Fitzpatrick and Meehan, plaintiffs did have a good faith basis for their claim and their claim was colorable and not "entirely devoid of merit." *See Salovaara v. Eckert, supra,* 222 F.3d at 30.

In support of their fee application, Fitzpatrick and Meehan cite deposition testimony from plaintiffs themselves suggesting that they had no evidence that Fitzpatrick or Meehan had received kickbacks, that the action was politically motivated and brought to retaliate against opponents to the TWU's new leadership and that plaintiffs relied on their attorneys to investigate the facts underlying their claims. Assuming the truth of all of these contentions, none establish bad faith sufficient to justify an award of attorneys' fees. The central issue in this action was whether Fitzpatrick and Meehan breached their fiduciary duties by renewing a medical insurance policy that resulted in a substantial outflow of cash from the Retirees Association with very little consideration in return. Given the legal and financial nature of the claim, I do not believe it was unreasonable for plaintiffs—former transit workers—to have relied on their attorneys. Just as most attorneys and judges have little knowledge of the technical aspects of a rapid transit system, it is unreasonable to assume that rapid transit workers have an understanding of the technical elements of an ERISA breach-of-fiduciary-duty claim. The presence of a possible political motive for the action does not diminish the colorable basis for the claim;

---

**3.** Fitzpatrick and Meehan admit, at least for purposes of this motion, that they are fiduciaries within the meaning of ERISA (Memorandum of Law in Support of an Award of Attorneys' Fees and Costs for Michael Fitzpatrick and John Meehan (Docket Item 127), undated, at 6–10).

any animus an ERISA plaintiff may have toward a defendant should not protect the defendant from an otherwise colorable claim. The mere fact that plaintiffs were unsuccessful does not prove bad faith nor does the ultimate lack of evidence to support the allegation that Fitzpatrick and Meehan received kickbacks. The disparity between premiums paid and benefits received under the policy, without more, provided a colorable basis for the claim; the presence or absence of the kickback allegations did not make a material difference in this action. *See Salovaara v. Eckert, supra,* 222 F.3d at 29–30 (ultimate lack of evidentiary support does not establish bad faith where there was a reasonable basis for claim at the commencement of the action); *accord Critelli v. Fid. Nat'l Title Ins. Co. of New York, supra,* 554 F.Supp.2d at 365–66; *see also King v. Tadco Constr. Corp., supra,* 2005 WL 1311929 at *2 (denying fees to prevailing ERISA defendant even where plaintiff knew or should have known at commencement of action that there was no basis for liability).

■ With respect to the second *Chambless* factor, the offending party's ability to satisfy an award of attorney's fees, no substantial evidence has been submitted on this issue, and I shall assume that plaintiffs have the ability to satisfy such an award. However, a party's ability to satisfy an award of attorney's fees is not dispositive. *Critelli v. Fid. Nat'l Title Ins. Co. of New York, supra,* 554 F.Supp.2d at 368; *Veltri v. Bldg. Serv. 32B–J Pension Fund,* 02 Civ. 4200(HB), 2004 WL 856329 at *2 (S.D.N.Y. Apr. 20, 2004)

The third *Chambless* factor—the need for deterrence—weighs against an award of attorney's fees. Given ERISA's policy of protecting plan beneficiaries, colorable claims—even if unsuccessful, should not be deterred. "[W]here, as in this case, an ERISA plaintiff has pursued a colorable

(albeit unsuccessful) claim, the third *Chambless* factor likely is not merely neutral, but weighs strongly *against* granting fees to the prevailing defendant." *Salovaara v. Eckert, supra,* 222 F.3d at 31 (emphasis in original); *accord Seitzman v. Sun Life Assurance Co. of Canada, Inc., supra,* 311 F.3d at 485; *Durgin v. Blue Cross & Blue Shield of Vt., supra,* 2008 WL 4416285 at *6; *Kazazian v. Bartlett & Bartlett LLP, supra,* 2007 WL 4563909 at *4; *Coram Healthcare Corp. v. CIGNA,* 236 F.Supp.2d 312, 313 (S.D.N.Y.2002).

■ The fourth *Chambless* factor, the relative merits of the parties' positions, is "intertwined" with the first factor, culpability/bad faith. *Sewell v. 1199 Nat'l Benefit Fund for Health & Human Servs., supra,* 2007 WL 1434952 at *1; *King v. Tadco Constr. Corp., supra,* 2005 WL 1311929 at *2. Because Fitzpatrick and Meehan prevailed on their summary judgment motion, their arguments necessarily had greater merit than plaintiffs. Something more, however, than success on the merits is required for this factor to weigh in favor of a prevailing ERISA defendant. In addition to the matters discussed in connection with the first *Chambless* factor, it is also worth noting that Judge Marrero rejected most of the summary judgment arguments asserted by Fitzpatrick and Meehan. He rejected their contention that plaintiffs lack standing. He rejected their contention that the Plan was not subject to ERISA. He rejected their contention that they were not fiduciaries as a matter of law. He rejected their contention that the selection of the Policy was a settlor function and not subject to ERISA's fiduciary oversight. Given the mixed responses to Fitzpatrick and Meehan's arguments overall, there is no basis for concluding that plaintiffs' position was "so disproportionately meritless as to justify the imposition of an award of attorney's

**594**

fees." *Gibbs v. Gibbs*, 210 F.3d 491, 505 (5th Cir.2000).

 Finally, the fifth *Chambless* factor, whether the action conferred a common benefit on a group of plan participants, is generally regarded as either inapplicable or neutral where an ERISA defendant is seeking attorney's fees. *See Salovaara v. Eckert, supra,* 222 F.3d at 28; *Anita Founds., Inc. v. ILGWU Nat'l Ret. Fund,* 902 F.2d 185, 191 (2d Cir.1990); *Critelli v. Fid. Nat'l Title Ins. Co. of New York, supra,* 554 F.Supp.2d at 368–69; *Coram Healthcare Corp. v. CIGNA, supra,* 236 F.Supp.2d at 314.

On balance, I conclude that the most significant *Chambless* factors weigh against an award of attorneys' fees to defendants. I recommend that their motion be denied.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I respectfully recommend that Fitzpatrick and Meehan's motion for an award of attorneys' fees (Docket Item 132) be denied in all respect.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Victor Marrero, United States District Judge, 500 Pearl Street, Room 660, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Marrero. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–238 (2d Cir. 1983).

Dated: New York, New York.

July 31, 2009.